Susan MILLER, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (WAL-MART), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 16, 2012.

Decided May 25, 2012.

Terrence E. Dempsey, Scranton, for petitioner.

Karyn Dobroskey Rienzi, Philadelphia, for respondent Wal–Mart.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

■ Susan Miller (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) denial of her Claim Petition against Wal–Mart (Employer). Claimant suffered a work-related injury and claims the specific loss of her left arm pursuant to Section 306(c) of the Workers' Compensation Act (Act).[1] On appeal to this Court, Claimant asserts that the WCJ erred when he found as a matter of law that Claimant failed to meet her burden of proving a specific loss. Although we find that the WCJ misstated the legal standard for determining whether a claimant has suffered the specific loss of a body part, we affirm the order denying benefits.[2]

## I. Background

Claimant sustained an injury to her left arm and a fracture of her left clavicle on December 20, 2005, which Employer accepted as a work-related injury in a Notice of Compensation Payable on December 30, 2005. Claimant initially received temporary total disability benefits based on her average weekly wages from Employer and from concurrent employment at a diner. Pursuant to a June 1, 2009 stipulation, approved by the WCJ, the parties agreed

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(3). Section 306 of the Act established a schedule of compensation for "all disability resulting from permanent injuries" of various classes, including subsection (c), which provides "[f]or the loss of an arm, sixty-six and two thirds per centum of wages during four hundred ten weeks." 77 P.S. § 513(3).

2. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, board procedures violated, and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *City of Pittsburgh v. Workers' Compensation Appeal Board (McFarren)*, 950 A.2d 358 (Pa.Cmwlth.2008). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of witnesses, but to determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

that Claimant will continue to receive partial benefits, so long as her earnings are less than her average weekly wage and the loss continues to be attributable to the work injury. (June 1, 2009 Stipulation at ¶ 7, Reproduced Record (R.R.) at 17a.) The parties stipulated that Claimant's benefits will continue until suspended, modified, or terminated in accordance with the Act. (*Id.*) By its terms, the parties' stipulation has no effect on the instant claim petition, and the ruling on Claimant's petition alleging a specific loss has no effect on the parties' agreement that she suffers from a partial disability.

The parties stipulated that Claimant's work-related injury is a "left spiral humeral fracture post-operative, left shoulder adhesive capsulitis and weakness, and radial nerve palsy." (*Id.* at ¶ 1; R.R. at 16a.) Her injury has required two surgeries, one in May 10, 2006, to insert a rod and 15 bolts into her left arm from the shoulder down to the elbow, and a second on August 4, 2009, to remove the bolts. At the time of the injury, Claimant worked for Employer as a claims manager and was responsible for handling merchandise returns, which included lifting the merchandise. Following her injury, Employer moved her to the door greeter position and subsequently moved her to the dressing room area, where she spends most of her time operating a telephone switchboard. Claimant has not been able to return to her second job. Claimant has never been released to return to full-duty work.

Claimant filed the instant claim petition on August 12, 2008, alleging a specific loss of her left arm. In support of her petition, Claimant testified at three hearings conducted on October 6, 2008, June 1, 2009, and October 14, 2009, and she presented the deposition testimony of Dr. Peter J. Baddick, M.D., and Dr. Robert W. Mauthe, M.D. Employer presented the hearing testimony of three employees, Janelle Regal, Amy Duffy, and Sherry Thompson, and the deposition testimony of Dr. William R. Prebola, M.D. Employer also submitted a short surveillance video of Claimant, filmed on June 16, 2009, and June 19, 2009.

The WCJ issued his decision on September 3, 2010, ruling in favor of Employer on the grounds that Claimant failed to meet her burden of establishing a specific loss and that the loss was permanent. The Board affirmed the WCJ's decision and Claimant appealed to this Court.

We reviewed the principles regarding specific loss benefits in *Jacobi v. Workers' Compensation Appeal Board (Wawa, Inc.)*, 942 A.2d 263 (Pa.Cmwlth.2008). "A specific loss is either (1) the loss of a body part by amputation or (2) the permanent loss of use of an injured body part for all practical intents and purposes." *Id.* at 264 n. 1. We continued:

When a claimant alleges that his injury has resolved into a specific loss, he has the burden of proving that he has permanently lost the use of his injured body part for all practical intents and purposes. A specific loss requires more than just limitations upon an injured worker's occupational activities; a loss of use for all practical intents and purposes requires a more crippling injury than one that results in a loss of use for occupational purposes. However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes. Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ. Whether the loss is for all practical intents and purposes is a question of law.

*Id.* at 267–268 (citations omitted).

We noted that it is not clear from the statute or our cases what specific type

or quantum of evidence will be sufficient to meet the claimant's burden of establishing that a specific loss is permanent and for all intents and purposes. *Id.* at 269; *see also Bakula v. Workmen's Compensation Appeal Board (Budd Co.)*, 134 Pa.Cmwlth. 37, 577 A.2d 961, 963–64 (1990) (noting that although "the case law is not clear as to what type of evidence is required and how strong that evidence must be" to establish a specific loss, the issue of the extent of the loss is a question of fact for the referee). We held that a claimant's testimony and the WCJ's observations are relevant and can be considered "as further support" of a finding of specific loss, but competent medical evidence must be presented before "further support" in the form of a claimant's testimony can be considered. *Jacobi*, 942 A.2d at 269. Stated another way, a claimant cannot rely solely on her own testimony and must present medical evidence to support a specific loss claim. *Id.*

## II. Summary of the Evidence

The WCJ issued a 32–page decision with 97 findings of fact and credibility determinations. Regarding the medical evidence, the WCJ found credible and persuasive the testimony of Employer's medical expert, Dr. Prebola, who opined that although Claimant suffers from a partial disability, she did not suffer a specific loss of her left arm for all intents and purposes. (WCJ Decision, Findings of Fact (F.F.) ¶¶ 47–50, 93; Prebola Dep. at 15, 24, R.R. at 375a, 377a.) The WCJ identified each specific part of Dr. Prebola's testimony that he found credible, and, where that testimony conflicted with another doctor's testimony, the WCJ explained why he found Dr. Prebola's more persuasive. (*See, e.g.*, F.F. ¶¶ 41, 50.) Dr. Prebola conducted an independent medical exam (IME) on March 18, 2009. Regarding Claimant's left shoulder, he found that she had 90 degrees of abduction (moving the arm up to the side away from the body) and 80 degrees of flexion (moving the arm upward to the front of the body), whereas 170 degrees is normal. (Prebola Dep. at 15, R.R. at 375a.) He found she retained 50 percent range of motion of the shoulder, but found that her left elbow, hand, and digits, and the range of movement in her wrist were normal. (Prebola Dep. at 15, 24–25, R.R. at 375a, 377a.) He concluded that Claimant has a partial disability in her left arm:

> She is functional—functioning or functionally using her left arm, which is the involved arm, from the shoulder down. So in my opinion, she does not have total loss of use of the left arm. She has impairment with the left arm. It's not total. It's partial. She has disability in regards to the left arm. It's not total. It is partial. So we're not dealing with someone who got their arm and hand caught in a meat grinder and suffered multilevel trauma, multilevel musculoskeletal involvement, and multilevel neurologic involvement. In that case, that may constitute a specific loss of use of the arm. But in this case, it's a shoulder injury.

(Prebola Dep. at 24, R.R. at 377a.)

The WCJ contrasted Dr. Prebola's testimony with Dr. Mauthe's and Dr. Baddick's, concluding that Dr. Prebola's findings concerning the range of motion of the left arm were not persuasively rebutted. (F.F. ¶ 50.) Dr. Mauthe found that Claimant had a 40 to 60 degree range of passive motion and no active motion of her left shoulder, meaning that Claimant was unable to initiate motion at her left shoulder and that someone else, or her right arm, had to move the left arm. (Mauthe Dep. at 13, 16, R.R. at 320a, 323a.) The WCJ found Dr. Mauthe's testimony "less persuasive" because Dr. Mauthe performed a physical examination of Claimant on July

15, 2008, eight months prior to Dr. Prebola's examination. (F.F. ¶ 50.)

Dr. Baddick is Employer's panel physician and one of Claimant's treating physicians. Dr. Baddick has seen Claimant more than 50 times, at least one time per month, since her injury. He opined:

I believe—and with absolute medical certainty that Susan Miller has had a total loss of function of the use of her left upper extremity as a result of her work related fall in December of 2005. I believe the result of that injury will be permanent. I believe she has lost the ability to perform functions in the routine activities of daily living, a component of her life she has developed some compensatory mechanisms being able to use her right arm, to put her left arm in a position so that she can actually use her fingers to perform some tactile functions, fine motor skill functions of the left upper extremity. For all intents and purposes with absolute medical certainty ... she does have a permanent loss of function of the left upper extremity.

(Baddick Dep. at 35–36, R.R. at 417a–418a.)

Dr. Baddick also described what he meant by a loss for all intents and purposes:

Well, I firmly believe she's had a greater than 50 percent loss in what she can—functioning and things that she can perform with regard to activities of daily living. We just start with activities of daily living. And we leave any type of career, employment type of functions out of the equation at first. We look at activities of daily living, she's had significant loss in her ability to perform her normal day to day activities of daily living, from brushing her teeth to grooming her hair, showering, to cleaning herself when she uses the toilet, to even getting dressed. She has the inability to elevate the shoulder joint to a level of function that enables her to be able to use the remainder of the upper extremity, of the three main joints of the upper extremity, that being the shoulder, the elbow and the wrist. All perform in conjunction with one another.

(Baddick Dep. at 37, R.R. at 419a.) As the WCJ noted, Dr. Baddick also testified that Claimant could use her left hand and use her arm at the elbow, enabling her to raise her hand to shoulder level, which is a normal function. (Baddick Dep. at 40, R.R. at 422a.)

The WCJ found Dr. Prebola's testimony persuasive because the WCJ considered Dr. Baddick's testimony (and Dr. Mauthe's) to be based primarily on Claimant's subjective perceptions of her abilities following her injury. (F.F. at ¶ 50.) At the June 1, 2009 hearing, Claimant demonstrated her range of motion and asserted that she could not move her left arm forward due to lack of control, and that she could only move her arm approximately one inch backward and one inch outward, away from her body. (June 1, 2009 Hearing Transcript (H.T.) at 14–16; R.R. at 134a–136a.) The WCJ found Claimant's demonstration of the use of her left arm was inconsistent (i) with a surveillance video depicting Claimant using her arm and (ii) with the testimony of Wal–Mart employees who witnessed Claimant using her arm at work.[3] (F.F. ¶ 31.) Both the surveillance video and the employee testimony

---

**3.** The WCJ found credible the testimony of three Wal–Mart employees who watched Claimant work following her injury. Each of the Employer's witnesses testified that they saw Claimant use her left arm in a manner that the WCJ found to be inconsistent with her testimony regarding her ability to grasp and hold objects and her range of motion at the shoulder. (F.F. ¶¶ 73–84.)

establish that Claimant suffers some loss of use of her arm, but not a loss of use for all intents and purposes. The WCJ stated:

It seems apparent to this fact finder that the Claimant's perception of her limitations when asked to describe/demonstrate them is different than reality. In other words, although her belief was sincerely expressed, she believes that she is more limited than she actually is. Her description of her limitations [during the June 1, 2009 hearing] is inconsistent with how she moved and used her left arm as depicted on the surveillance taken on June 19, 2009.

(F.F. ¶ 31.) The WCJ also found that the surveillance video contradicted Claimant's testimony that she needed to use her right arm to lift or move her left arm, and that she could not open a car door with her left arm and instead can only use her right arm. (F.F. ¶¶ 30, 57.)

The video contains two vignettes. In the first, Claimant is seen through the passenger window of her car as she enters the driver's side. Claimant lifts her left arm to near the top of the steering wheel as she enters the car and arranges herself in the driver's seat. She briefly grasps the steering wheel with her left hand and then releases, as her arm drops out of view. (F.F. ¶ 57(b); Surveillance Video, June 19, 2009, at time 12:54.) In the second, Claimant is shown entering and then exiting a restaurant with her mother, who is using a walker. Although Claimant does not open the restaurant door with her left arm alone, she lifts both of her arms in front of her as she enters and exits, before the left arm falls to her side. The video clip also shows Claimant assisting her mother with the walker. Claimant folds and lifts the walker with her right arm, stabilizing and gripping the walker with her left arm. (F.F. ¶ 57(b); Surveillance Video, June 19, 2009, at time 13:43.) Claimant then walks around the car to the driver's side and opens the car door with her left arm, which contradicts her statement that she could only open doors with her right arm. (F.F. ¶ 87; June 1, 2009 H.T. at 42, R.R. at 162a.)

### III. Discussion

Claimant has two primary arguments to support her contention that the WCJ erred. First, she argues that the WCJ misstated the legal standard for establishing the specific loss of an arm under Section 306 of the Act, 77 P.S. § 513(3), which resulted in the erroneous legal determination that she did not prove her claim. This erroneous standard, she argues, was also used by Employer's expert, Dr. Prebola (his testimony quoted above), and as a result, Dr. Baddick's medical testimony (quoted above) should control. Claimant seeks a correction of the legal standard and a remand. Second, she argues the WCJ's determination that her condition is not permanent is not supported by substantial evidence.

The crux of the WCJ's ruling is at paragraphs 93 and 94, which we include here in their entirety because they form the basis of Claimant's appeal. First, the WCJ summarizes his ruling and enunciates the legal standard that he applied:

93. I find as a fact that: The limitations which Claimant experiences in the left upper extremity do not rise to the level of a permanent loss of her arm for all practical intents and purposes. *Reasoning/Credibility Comment:* See the credible and persuasive testimony of Dr. Prebola at Prebola deposition, pg 23, line 15–pg 24, line 14 and Finding 53(d) above. It is also noted that differences in the medical and lay testimony in this matter are not especially great, primarily centering around the impairment of

Claimant's ability to perform various tasks, and whether that impairment results in specific loss. *As indicated in Finding 92 above, it is clear from the statutory provision that a loss of an arm includes the loss of the use of the hand and the loss of use of the forearm. This conclusion is the only reasonable conclusion that can be drawn by the fact that the number of weeks of benefits is four hundred and ten weeks for an arm (which, by implication, would include the forearm and hand), three hundred and seventy weeks for an [sic] forearm (which, by implication, would include the hand) and three hundred and thirty-five weeks for a hand.*

(F.F. ¶ 93 (emphasis added).)

The WCJ next summarizes his findings of fact:

It is clear from the testimony of Dr. Mauthe as well as Dr. Baddick that their respective opinions that the Claimant had loss [sic] the use of her arm was based primarily upon the limitations which the Claimant has at the shoulder, which essentially affects her ability to move her upper arm. It is clear from the credible testimony of the Claimant, as well as the credible testimony of [Wal–Mart employees] Ms. Regal, Ms. Duffy and Ms. Thompson, as well as the video surveillance that the Claimant is able to utilize her hand and forearm, both in performing work functions as well as various activities of daily living. There is no doubt that the Claimant's ability to move her upper arm limits her ability to place her forearm and hand at some locations "in space." The credible and persuasive testimony of Dr. Prebola, Ms. Regal, Ms. Thompson and Ms. Duffy, along with the activity shown on the video, establishes that the Claimant remains capable of performing numerous work tasks as well as activities of daily living even though her mode of performing some of these activities needs to be modified to accommodate the limitations which exist primarily at the shoulder level.

(F.F. ¶ 93.)

The WCJ continues by further explaining his credibility determinations:

This [WCJ] certainly recognizes that Claimant's unfortunate medical condition significantly limits the use of her left upper extremity, and in many circumstances, probably causes significant pain and/or other discomfort. Nevertheless, the opinion of Dr. Prebola that her limitations do not constitute a permanent loss of use for all practical intensive [sic] purposes is found to be credible and persuasive and more persuasive than the contrary opinions of Dr. Mauthe and Dr. Baddick. This [WCJ] concludes that the opinion of Dr. Prebola is more consistent with the credible testimony of the Employer witnesses and the video concerning the actual use to which the Claimant is able to put her upper extremity given her ability to bend her elbow and utilize her forearm and hand. Furthermore, Claimant's loss is not "permanent," in that Dr. Baddick acknowledged the possibility of some recovery of movement following her second left upper extremity surgery. See Baddick deposition, pg 77, lines 12–21.

(F.F. ¶ 93.)

Finally, the WCJ reiterates that he is making a legal determination based on his findings of fact:

Whether the loss is "for all practical intents and purposes" is a legal conclusion, based upon the extent of loss of use of the body part at issue. See Discussion below. It is evident from the testimony that Claimant can perform her work duties, and use her arm as a means of lifting items. While the medi-

cal evidence establishes some impairment, it does not rise to the level of specific loss. See especially Findings 50(a) through (f); 51; 53(e) including the Reasoning/Credibility Comment; 55(c); various findings in paragraphs 73 through 84; and Findings 57(a) through (d).

(F.F. ¶ 93.)

In paragraph 94, the WCJ explains his finding that Claimant's condition is not permanent:

> 94. I find as a fact that: Claimant has failed to meet her burden of proving that the current extent of her limitations is "permanent". *Reasoning:* Dr. Baddick credibly and persuasively testified that the Claimant may experience some recovery of movement following her second left upper extremity surgery. See Baddick deposition, pg 77, lines 12–21. This opinion was not rebutted by any testimony by Dr. Mauthe who did not address that surgery. Perhaps that surgery had not been proposed when Dr. Mauthe testified. Dr. Mauthe only discussed the possible manipulation under anesthesia. See Evidentiary Findings 43(e) and (f) above. This was not the procedure Claimant underwent in August 2009. See Findings 85(b) and 69(a), (b) and (c) above.

(F.F. ¶ 94.)

We agree with Claimant that the WCJ misstated the legal standard for a specific loss set forth in our prior decisions. Remand, however, is not necessary, because the WCJ has made the competent findings of fact and credibility determinations, which are supported by substantial, credible evidence. Based on those facts as found by the WCJ, we find that Claimant has not established a specific loss of her left arm as a matter of law.

The WCJ stated that in order to prove a specific loss of an arm, a claimant must also suffer the loss of the hand and the forearm. This was error. We have repeatedly ruled that it is not necessary that the injured body part be 100 percent useless in order for the loss of use to qualify as being for all practical intents and purposes. *Jacobi*, 942 A.2d at 268; *Allegheny Ludlum Steel Corp. v. Workers' Compensation Appeal Board (Malobicky)*, 753 A.2d 330, 335 (Pa.Cmwlth.2000). In other words, a claimant may prove a specific loss even where she retains some use of the injured body part.

In *Malobicky*, we affirmed the finding of a specific loss of use of the claimant's left arm, where a neck injury had rendered the claimant's shoulder non-functional. 753 A.2d at 334. The claimant testified that he had "no limitations with his left arm from his elbow down to the fingers and his left hand," but was unable to move his arm from the shoulder more than a few inches in any direction. *Id.* at 332. The claimant's medical expert testified that the shoulder's range of motion was 10 percent of normal, that the shoulder was "non-functional" and had a "drop shoulder appearance," that the claimant could not use his shoulder to stabilize the movement of the rest of his arm, unlike a fully-functioning arm, and, as a result, the claimant had lost the use of his arm for all practical intents and purposes. *Id.* at 332–33. The employer's medical expert testified that the claimant had not suffered a specific loss of the left arm because he still had normal motion, muscle strength, sensation, and function on his left hand. *Id.* at 333. The WCJ found the claimant's and his expert's testimony credible, and ruled in favor of the claimant. The employer appealed and we affirmed the finding of a specific loss, rejecting the employer's argument that there can be no specific loss

of an arm unless there is also a loss of the hand and forearm. *Id.* at 334–35.

Likewise, in *HGO, Inc. v. Workmen's Compensation Appeal Board (Hadley)*, 651 A.2d 719, 723 (Pa.Cmwlth.1994), we found a shoulder injury resulted in the specific loss of the arm where the claimant showed substantial, competent evidence that he was unable to use his arm for any tasks except those that required him to work directly in front of him with his hand and lower arm, that he was unable to lift his arm and hold it in front of him, and that he could only lift small objects short distances using his hand, wrist, and forearm.

■ Our cases indicate that there is no bright-line test that may be applied, except when a claimant submits no medical evidence whatsoever. The legal determination will hinge on the specific fact findings of each case, including findings regarding credibility, the degree of the injury, and the degree of the claimant's ability to continue to use the injured body part. The degrees to which a claimant may continue to use the hand, wrist, and forearm are relevant to a determination of whether there is a specific loss of use of the arm, but they are not dispositive.

■ Thus, it was error for the WCJ to state that a claimant must prove the loss of a hand and the loss of a forearm to prove the specific loss of an arm under Section 306 of the Act, 77 P.S. § 513(3). That error, however, did not infect the WCJ's factual and credibility determina-

tions, which are supported by substantial, competent evidence, and provide us with a sufficient basis to render a legal determination regarding whether there is a specific loss.[4]

The facts according to the WCJ are that Claimant retains approximately 50 percent movement in her shoulder, as found by Dr. Prebola's credible testimony. The WCJ also found that Claimant's descriptions and demonstrations of the use of her arm were contradicted by the surveillance video. Our own review of the surveillance video confirms that the WCJ's observations regarding Claimant's use of her left arm are supported by substantial evidence. Based on his credibility determinations, the WCJ found Dr. Prebola's testimony more persuasive than the medical evidence submitted by Claimant. The WCJ found that Claimant had normal movement of her elbow, wrist, and hand. Finally, the WCJ found that Claimant, although limited, was able to conduct many normal daily activities of life. Based on those facts, we find that Claimant has not established the specific loss of her left arm. *See Jacobi*, 942 A.2d at 267–68 (holding that the degree of the loss of use of a body part is a question of fact; whether the loss is for all practical intents and purposes is a question of law).

Claimant argues that our decision in *Malobicky* controls. The key distinction between the instant matter and *Malobicky* is that here, the WCJ found that Claimant's testimony regarding her limitations and the relevant portions of her medical experts' testimony were not credible.

4. The WCJ fulfilled the requirements of Section 422(a) of the Workers' Compensation Act to aid meaningful appellate review by issuing a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole and clearly stating the rationale for the decision. 77 P.S. § 834. When the WCJ was faced with conflicting evidence, he explained his reasons for reject-

ing or discrediting competent evidence, pursuant to Section 422(a) of the Act, thereby fulfilling the quintessential function of the fact finder to determine the credibility of the witnesses. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 667, 916 A.2d 635 (2007).

Further, Claimant here retains more function in her injured arm than either of the claimants in *Malobicky* and *Hadley*. It is apparent from the record that Claimant continues to suffer from an injury that affects her ability to perform her job and various day-to-day activities, like bathing, household chores, and caring for her elderly mother. It is also apparent, however, that Claimant has not suffered a specific loss of her left arm for all practical intents and purposes. Claimant's use of her arm is limited, using it causes her pain, and her current condition is not likely to improve. Nevertheless, Claimant has retained meaningful use of her arm, such that we cannot conclude, as a matter of law, that she has suffered a specific loss.

█ Next, Claimant challenges the WCJ's finding that her injury is not permanent. We agree with Claimant. The WCJ found that "Claimant has failed to meet her burden of proving that the current extent of her limitations is 'permanent,'" finding that Dr. Baddick "credibly and persuasively testified that Claimant may experience some recovery of movement" following surgery to repair her upper arm. (F.F. ¶ 94, quoted above in its entirety (citing Baddick Dep. at 77, R.R. at 459).)

That finding is not supported by the record. Dr. Baddick explained that Claimant's surgery in August 2009 was an attempt to reduce her pain level in light of the numerous implants she received following her work-related arm injury. (Baddick Dep. at 77–78, R.R. at 459–460.) Dr. Baddick explained that pain level "can" generally affect functionality, but when explaining his answer as it applied specifically to Claimant, he said her surgery was to reduce her chronic pain level in hopes of reducing the amount of pain medication she was required to take. (*Id.*) He explained, however, that he considered Claimant to be at the "point of maximum medical improvement." (Baddick Dep. at 77, R.R. at 459a.) Moreover, Dr. Baddick testified consistently throughout his deposition that he was medically certain that Claimant's condition was a permanent and severe loss of function of her left shoulder joint and upper arm. (Baddick Dep. at 35, 36, 49, 59, 62, 87, 96, R.R. at 417a, 418a, 431a, 441a, 469a, 478a.) The WCJ correctly noted that Dr. Baddick's testimony regarding the permanency of "the current extent of her limitations" was not contradicted by other medical evidence, nor did the WCJ reject this testimony or accept as credible any other medical evidence regarding Claimant's recovery.

Accordingly, we find that the WCJ's finding that Claimant's injury is not permanent is not supported by substantial evidence. Our affirmance is based solely on the ground that Claimant's injury is not a specific loss of use for all practical intents and purposes.

### ORDER

AND NOW, this 25th day of May, 2012, the order of the Workers' Compensation Appeal Board in the above matter is AFFIRMED.