IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy J. Perkins,                :
                 Petitioner       :
                          :
      v.                   :  No. 305 C.D. 2023
                          :
Consolidated Pennsylvania Coal  :
Company, LLC and East Coast Risk :
Management, LLC (Workers'     :
Compensation Appeal Board),    :
               Respondents  :  Submitted: June 4, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge (P.)
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: July 17, 2024

Timothy J. Perkins (Claimant) petitions this Court for review of a March 1, 2023 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Consolidated Pennsylvania Coal Company, LLC's (Employer) petition to modify Claimant's workers' compensation benefits (Modification Petition). Claimant argues that the WCJ's decision is not supported by substantial evidence, and that the WCJ improperly substituted his own medical judgment for the opinions offered by Claimant's expert witness. After review, we affirm.

## I. Background

Claimant worked as a coal miner for Employer when he sustained a work injury to his left foot on February 2, 2018. Certified Record (C.R.), Item No. 23, Bureau Documents. Employer issued a Notice of Compensation Payable (NCP)

accepting liability for the work injury, which it described as a crushing injury to the left foot. *Id.* Claimant's third and fourth toes and part of his second toe were amputated the day he sustained the work injury. C.R., Item No. 18, Report of Dr. Brian Ernstoff. Employer suspended Claimant's wage loss benefits on October 15, 2018, when Claimant returned to work in a light-duty capacity. C.R., Item No. 23. Claimant suffered a recurrence of his work injury on October 19, 2018, at which time Employer reinstated Claimant's wage loss benefits. *Id.* Employer suspended Claimant's wage loss benefits a second time after Claimant returned to work on January 14, 2019. Claimant's work injury recurred on June 1, 2019, resulting in a second reinstatement of wage loss benefits. *Id.*

On October 13, 2020, Claimant underwent an independent medical examination (IME) by Dr. Jeffrey Kann at Employer's request. *Id.*, Finding of Fact (F.F.) No. 3. Based on Dr. Kann's findings, Employer filed its Modification Petition on February 24, 2021, alleging that Claimant's injury had resolved into a specific loss when his toes were amputated on February 2, 2018. C.R., Item No. 2. Therefore, Claimant was entitled to 40 weeks of specific loss benefits, pursuant to Section 306(c) of the Workers' Compensation Act (Act), with Employer owed a credit for any benefits paid after October 13, 2020.[1] *Id.* Employer further alleged

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 26, 1919, P.L. 642, 77 P.S. § 513(c). Section 306(c)(17)-(21) of the Act provides that for all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively:

> (17) For the loss of a great toe, sixty-six and two-thirds per centum of wages during forty weeks.
> (18) For the loss of any other toe, sixty-six and two-thirds per centum of wages during sixteen weeks.
> (19) The loss of the first phalange of the great toe, or of any toe, shall be considered equivalent to the loss of one-half of such great toe, or other toe, and shall be

2

that, because Claimant had not suffered any disability separate and apart from the specific loss, he was no longer entitled to disability benefits.[2] *Id.* Claimant denied the allegations in Employer's Modification Petition and asserted that he remained disabled by his work injury, separate and apart from the amputations. C.R., Item No. 4.

Before the WCJ, Claimant offered his own testimony at two hearings, as well as deposition testimony by Dr. Brian Ernstoff, his treating physician. In support of its Modification Petition, Employer presented the deposition testimony of Dr. Kann.

**A. Claimant's Evidence**

At the time of the March 30, 2021 hearing before the WCJ, Claimant was 49 years old. C.R., Item No. 12, 3/30/2021 Hr'g Tr. at 9. Recalling his February 2, 2018 work injury, Claimant explained that he was standing on the floor of a mining area when a coworker inadvertently dragged a "long-wall pan," a vessel used to collect coal, over Claimant's left foot. *Id.* at 11-12. Claimant remained out of work

---

compensated at the same rate as for the loss of a great toe, or other toe, but for one-half of the period provided for the loss of a great toe or other toe.
(20) The loss of more than one phalange of a great toe, or any toe, shall be considered equivalent to the loss of the entire great toe or other toe.
(21) For the loss of, or permanent loss of the use of any two or more such members, not constituting total disability, sixty-six and two-thirds per centum of wages during the aggregate of the periods specified for each.

77 P.S. § 513(c)(17)-(20). According to the Modification Petition, the loss of Claimant's third and fourth toes beyond their first phalanges, and the partial loss of his second toe at the first phalange, entitled him to 40 weeks of specific loss benefits. C.R., Item No. 2. Such benefits would have expired in November 2018.

[2] While the general rule is that a claimant awarded specific loss benefits under Section 306(c) of the Act is not otherwise entitled to workers' compensation benefits, an exception arises where the claimant sustains injuries that are separate and distinct from those that flow from the specific loss injury. *Kemps v. Steets (Workers' Comp. Appeal Bd.)*, 257 A.3d 1271, 1277 (Pa. Cmwlth. 2021).

for several months as a result of the injury, before returning to light duty as a shuttle car operator.[3] *Id.* at 12. Claimant was moved to a different position in June 2019, which demanded considerably more walking. *Id.* at 13-14. Due to the uneven surface of the mine floor as well as the sheer distances to be travelled, Claimant found himself incapable of continuing in that position and stopped work again after just three days. *Id.* at 13. Employer terminated Claimant's employment on June 2, 2020. *Id.* at 24. Since his work ended in June 2019, Claimant worked as a stay-at-home father, and occasionally earned supplemental income from buying, fixing, and reselling cars. *Id.* at 21-22. Claimant was not seeking new employment at the time of his testimony. *Id.* at 22.

To treat the lingering pain symptoms from his work injury, Claimant began seeing Dr. Ernstoff in June 2019. *Id.* at 14. Asked to summarize his condition at the time of his testimony, Claimant described the second toe on his left foot as "really mangled," "still numb," and plagued with a "burning sensation." *Id.* Claimant also explained that the remaining nubs of his third and fourth toes "still bother" him and cause him to "walk crooked." *Id.* at 14-15. After being on his feet for extended periods, Claimant found it necessary to sit in his recliner and raise his left foot to let it rest. *Id.* at 16. To aid in balance and mobility, Claimant also wore a toe filler inside his left shoe, which sits in place of his toes. *Id.* at 16-17. At Claimant's last visit with Dr. Ernstoff, which took place two weeks before Claimant's testimony, the doctor acknowledged that there was "nothing else he could do" to treat Claimant's condition. *Id.* at 17.

---

[3] Although Claimant testified to being out of work for 11 months, the record reflects that he returned to work in a light-duty position, without loss of income, on October 15, 2018. *See* C.R., Item No. 23.

Testifying a second time before the WCJ on January 4, 2022, Claimant reported that he still felt soreness and sensitivity in the areas where his injury occurred. C.R., Item No. 15, 1/4/2022 Hr'g Tr. at 8. Claimant described particular sensitivity in his second toe and mentioned that "the tip [of the toe] is like a bone." *Id.* at 7. Occasionally, Claimant explained, he would feel pain that begins on the bottom of his foot and radiates through his leg. *Id.* Claimant also stated that he walked with a limp as a result of his symptoms, which, in turn, has led to pain in his left knee and hip. *Id.* at 9-10. Nonetheless, Claimant acknowledged that he had not contacted Dr. Ernstoff's office since his previous testimony or sought any other medical treatment for his symptoms. *Id.* at 12-13. Claimant also admitted that he had not "looked for any type of work at all" since the previous testimony. *Id.* at 15.

At an August 26, 2021 deposition, Dr. Ernstoff recalled that he first saw Claimant in November 2018, on a referral from another doctor regarding phantom pain. C.R., Item No. 19, Ernstoff Dep. at 10. Summarizing the findings of his initial examination, Dr. Ernstoff explained that a walking person's foot and toes normally lie flat against the ground in mid-step, before the leg rises and the toes push off the ground again. *Id.* at 11. By contrast, Claimant's left toes did not come down to the ground in tandem with the mid-foot, which prevented him from pushing off the ground with a normal amount of force. *Id.* at 11. To treat the discrepancy, Dr. Ernstoff prescribed shoe inserts that are designed to restore some of Claimant's ability to push off the ground with his left foot. *Id.* at 12. Dr. Ernstoff also prescribed medication for Claimant's persistent pain symptoms, which provided "temporary relief." *Id.* at 13.

Regarding Claimant's work abilities, Dr. Ernstoff expressed doubt that Claimant would ever be able to return to his pre-injury job. *Id.* at 16-17. Dr. Ernstoff

explained that underground mining environments often require frequent crouching as well as walking, resulting in substantial pressure on the forefoot. *Id.* at 16. Given Claimant's persistent neuropathic complaints and phantom pain, Dr. Ernstoff opined that Claimant would be capable of returning to work in a restricted capacity, provided that breaks during the day were permitted and that he could avoid crouching or walking long distances. *Id.* at 17. Dr. Ernstoff also acknowledged that the aforementioned symptoms were normal sequelae from the type of amputations that Claimant underwent. *Id.* at 54.

### B. Employer's Evidence

In his deposition testimony, Dr. Kann recalled that Claimant presented to the October 13, 2020 IME with "mild pain, particularly at his second toe[,] with activity." C.R., Item No. 22, Kann Dep. at 16. Dr. Kann also noted that Claimant "denied any swelling of the left foot," and was neither taking medication to treat any persistent symptoms nor wearing any shoe modifications. *Id.* When Dr. Kann asked Claimant to walk, Dr. Kann observed no gait abnormalities, and that Claimant appeared to be moving with "the push[-]off power of all five toes," with "no loss of that function whatsoever." *Id.* at 18. A closer examination of the foot revealed the "obvious partial amputation of the third and fourth toes" and "a well[-]healed laceration of the second toe." *Id.* Dr. Kann detected slight tenderness to palpation on the sole of the foot just below the second toe, but determined that the remainder of Claimant's foot was "completely unremarkable." *Id.* at 19. Following the examination, Dr. Kann observed x-rays of Claimant's foot, which Dr. Kann interpreted as showing partial losses up to the middle bone of his third and fourth toes, and no bone losses in the second toe. *Id.* at 20.

While acknowledging that Claimant had indeed lost a piece of his second toe, Dr. Kann maintained that, from "a strictly functional standpoint, he really hasn't lost any of [its] function." *Id.* at 22. Thus, Dr. Kann denied that Claimant had ever "lost half that toe for all practical intents and purposes." *Id.* Dr. Kann further opined that no persistent symptoms in Claimant's foot were separate and apart from the initial injury to his second, third, and fourth toes, and subsequent amputation. *Id.* at 23. Claimant's injuries were narrowly limited to those toes, Dr. Kann explained, and did not exhibit any symptoms elsewhere in the foot. *Id.* Dr. Kann further noted that "the initial hypersensitivity [Claimant] had at the tips of his third and fourth toes is just a normal expected outcome of a traumatic amputation" and that such sensitivity "tends to improve over time." *Id.*

### C. The WCJ's Decision

In a June 2, 2022 decision, the WCJ concluded that "Employer has met its burden of proving that Claimant's injury has resolved to the loss of the third and fourth toes and half of the second toe of the left foot as of October 13, 2020." WCJ Decision, Conclusion of Law (C.L.) No. 1. Consequently, the WCJ determined that Claimant was entitled to 40 weeks of specific loss benefits, with a credit to Employer for benefits paid after October 13, 2020. *Id.*, C.L. Nos. 1-2.

Explaining his decision, the WCJ noted that he credited Claimant's testimony in part, but rejected it "to the extent it was offered to prove that he has knee and hip problems that are related to the work injury." *Id.*, F.F. No. 12. The WCJ also credited Dr. Kann's opinions over those offered by Dr. Ernstoff, as the WCJ was "not persuaded that the conditions identified by Dr. Ernstoff constitute an injury or disability separate and apart from the specific loss." *Id.*, F.F. 13. A gait abnormality, the WCJ reasoned, "is not a separate injury to another body part but would appear

7

to be a consequence of the specific loss." *Id.* The WCJ further explained that the neuropathic pain and limitations of the joints of the toes "would also appear to be a consequence of and to flow from the specific loss," as Dr. Ernstoff himself acknowledged. *Id.* Nonetheless, contrary to Dr. Kann's opinion that Claimant sustained no functional loss in his second toe, the WCJ was "persuaded that Claimant has lost the use of one half of the second toe based on the limited loss of motion of that toe and the other symptoms in that toe." *Id.*

Claimant appealed to the Board, which affirmed. *See* C.R., Item No. 10. This appeal followed.[4]

## II. Issues

Claimant argues that the WCJ's decision is not supported by substantial, competent evidence because Employer never submitted medical evidence that Claimant permanently lost the use of one half of his second toe for all intents and purposes, and because the WCJ "substituted his own medical knowledge in making his ruling, ignoring the medical evidence in the record." Claimant's Br. at 7.

## III. Discussion

An employer seeking to modify a claimant's benefits on the ground that the claimant's disability has changed carries the burden of proving that change by way of medical evidence. *Pertile v. Workmen's Comp. Appeal Bd. (Constr. Eng'g Consultants, Inc.)*, 687 A.2d 367 (Pa. 1997). If the employer seeks modification to establish a specific loss, it must show that the injured party has suffered the permanent loss of use of the injured member for all practical intents and purposes.

---

[4] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

8

*HGO, Inc. v. Workmen's Comp. Appeal Bd. (Hadley)*, 651 A.2d 719, 722 (Pa. Cmwlth. 1994). While medical evidence is necessary, the claimant's testimony and the WCJ's own observations are relevant and may constitute further support of a finding of specific loss. *Miller v. Workers' Comp. Appeal Bd. (Wal-Mart)*, 44 A.3d 726, 729 (Pa. Cmwlth. 2012). The question of whether a claimant has lost the use of a body part and the extent of that loss of use is one of fact; the question of whether the loss is permanent for all practical intents and purposes is a mixed question of law and fact. *Bauer v. Workmen's Comp. Appeal Bd. (Ram Constr. Co., Inc.)*, 517 A.2d 568, 571 (Pa. Cmwlth. 1986).

Instantly, the WCJ found that, as a result of his work injury, Claimant lost his third and fourth toes and one half of his second toe. Under the schedule of compensation for specific losses provided in Section 306(c) of the Act, such losses result in a total payment equal to 2/3 of 40 weeks of Claimant's wages. On appeal, Claimant does not dispute the WCJ's determinations regarding his third or fourth toes, but argues only that there is no medical evidence to support the conclusion that he permanently lost the use of one half of his second toe. In support, Claimant points to Dr. Kann's denial that Claimant has permanently lost the use of his one half of his second toe for all practical intents and purposes. Claimant's Br. at 11 (citing Kann Dep. at 22).

Claimant's argument is lacking in merit. The WCJ clearly stated that he credited Claimant's testimony, exclusive of his testimony on knee and hip pain resulting from his abnormal gait. WCJ Decision, F.F. No. 12. That testimony includes Claimant's own observations that his second toe is "really mangled," 3/30/2021 Hr'g Tr. at 14, and his description of the tip of the toe as "like a bone," 1/4/2022 Hr'g Tr. at 7. While it is true that the WCJ generally credited Dr. Kann's

testimony over Dr. Ernstoff's, the WCJ also noted his finding that "Claimant has lost the use of one half of the second toe based on the limited loss of motion of that toe and the other symptoms in that toe." WCJ Decision, F.F. No. 13. As stated above, a claimant's own testimony can lend support to a factfinder's conclusion that an injury has resolved into a specific loss. Thus, we see no error in the WCJ's conclusion.

Next, we address Claimant's argument that the WCJ substituted his own medical opinion in determining that Claimant lost the use of one half of his second toe. It is well settled that a WCJ, who is not qualified as an expert medical witness, is not permitted to substitute or rely on his own opinion to make medical findings. *Zeigler v. Workers' Comp. Appeal Bd. (Jones Apparel Grp., Inc.)*, 728 A.2d 421, 424 (Pa. Cmwlth. 1999). According to Claimant, the WCJ ran afoul of this principle when he ignored Dr. Kann's opinion on the remaining use of one half of Claimant's second toe, despite otherwise crediting Dr. Kann's testimony. Claimant maintains that the WCJ is "bound by the opinions of Dr. Kann" due to the WCJ's crediting of Dr. Kann's testimony over Dr. Ernstoff's. Claimant's Br. at 17.

Claimant's argument is, again, unpersuasive. The WCJ's conclusion of the functional loss of one half of Claimant's second toe is not the product of an improper medical determination. Rather, it is the logical result of the WCJ's acceptance of Claimant's own testimony. As explained above, the WCJ is free to consider a claimant's fact testimony when reaching the conclusion that a specific loss has occurred. Furthermore, we disagree with Claimant's argument that the crediting of a medical witness's testimony commits a WCJ to an adoption of that witness's

statements in their entirety.[5]  As we have long held, the WCJ "is free to accept or reject the testimony of any witness, *including a medical witness*, in whole or in part." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004) (emphasis added).

### IV. Conclusion

For the foregoing reasons, we affirm the Board.

ELLEN CEISLER, Judge

---

[5] While rejecting that argument, we must also acknowledge that the WCJ did not clearly and concisely explain his rationale for rejecting Dr. Kann's opinion that there was no functional loss in Claimant's second toe, despite otherwise crediting Dr. Kann's testimony over Dr. Ernstoff's.  By omitting such an explanation, the WCJ fell short of the longstanding requirement to "specify the evidence upon which he . . . is relying, and to state the reasons for accepting that evidence." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1047 (Pa. 2003).  Any resulting error was harmless, however, since even Dr. Ernstoff acknowledged that Claimant's lingering pain and gait abnormalities were the normal consequences of amputations such as those undergone by Claimant.  *See* WCJ Decision, F.F. No. 13; Ernstoff Dep. at 54-55.  Thus, the record clearly supports the WCJ's conclusion that no injuries remain that are separate and apart from Claimant's specific losses.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy J. Perkins,        :
          Petitioner     :
                        :
     v.                :  No. 305 C.D. 2023
                        :
Consolidated Pennsylvania Coal  :
Company, LLC and East Coast Risk  :
Management, LLC (Workers'     :
Compensation Appeal Board),    :
          Respondents   :

# **O R D E R**

AND NOW, this 17th day of July, 2024, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated March 1, 2023, is AFFIRMED.

 

ELLEN CEISLER, Judge