**Donna SIMS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHOOL DISTRICT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 2, 2007.

Decided June 1, 2007.

Reargument Denied July 27, 2007.

Kenneth M. Kapner, Philadelphia, for petitioner.

Angela Yahner, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, LEAVITT, Judge.

OPINION BY Judge LEAVITT.[1]

Donna Sims (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying Claimant's penalty petition. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant failed to prove that her employer violated the Workers' Compensation Act[2] (Act). The WCJ concluded that Claimant's documentary evidence did not support a finding that either medical or indemnity benefits owed to Claimant had not been paid to her in accordance with the Act. We affirm.

Claimant sustained a work-related injury on November 7, 1991. The School District of Philadelphia (Employer) issued a Notice of Compensation Payable describing the injury as "left foot big toe" and providing weekly compensation of $148.43. Exhibit B-1. In November 2004, Claimant filed a penalty petition alleging that Employer violated the Act by failing to pay for reasonable medical expenses. At the hearing before the WCJ, Claimant orally amended her penalty petition to allege that Employer also violated the Act by failing to pay Claimant the full amount of indemnity benefits to which she was entitled. Employer denied all allegations.

Claimant testified on her own behalf. She stated that she underwent an MRI at

---

1. This case was reassigned to the author on April 10, 2007.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

Methodist Hospital, but because Employer did not pay the bill, she has been contacted by a collection agency.[3] In support, Claimant offered a copy of an April 14, 2005, letter from the collection agency, Accounts Recovery Bureau, Inc., stating that Claimant owes Methodist Hospital $1,213.66. Exhibit C–1.

Claimant then stated that in March 2005 she received an invoice from Hanger Prosthetics & Orthotics (Hanger) for orthotic shoes. Claimant explained that her doctor has prescribed special shoes because her work injury has resulted in two differently sized feet. Claimant submitted the Hanger invoice to Employer for payment, but it was denied as not work-related. Exhibit C–2, page 1. The Hanger invoice lists Claimant's name and the referring physician as "Dr. Stanley Boc." On this invoice was written "not work related" and instructions to "see attached." *Id.* That attachment was a form letter from Sedgwick Claims Management Services captioned "We are returning the attached for the following reasons." Checked off were the reasons: "We have not received an *Employer's Report of Occupational Injury or Disease;* " "Insure[r] advised this is not a work related injury and/or they have no report;" and "No date of injury on file." Exhibit C–2, page 2 (underlining in original).[4]

Finally, Claimant testified that her doctor prescribed a cream to apply to her foot, but she had been unable to have it filled at her pharmacy. In support, Claim-ant submitted a document she received from Eckerd Drug stating "Primary Payer Claim Denied." The document listed Claimant's name and identified the product as "Naftin CR 1.0%." Exhibit C–3.[5] Claimant stated that she believed that this cream would cost approximately $60 if she had to pay for it.

Claimant did not testify regarding Employer's alleged underpayment of wage loss benefits, but she submitted two payroll records. The first covered the pay period ending July 1, 2001, and listed Claimant's compensation as $296.80. Exhibit C–5. The second pay record covered the pay period ending August 5, 2005, and listed Claimant's compensation as $290.64. Exhibit C–6. Although Claimant did not testify about this difference in compensation, her counsel stated that Claimant's benefits had been terminated at some point, and then reinstated. After reinstatement, Employer began paying $6.16 less per week.

■ After considering all of the evidence, the WCJ denied the penalty petition. As to the medical bills, the WCJ found that Claimant failed to prove a violation with respect to the non-payment of an MRI at Methodist Hospital, the shoes from Hanger or the foot cream. The WCJ explained the reasons for this conclusion as follows:

Claimant produced no evidence to establish bills were submitted on the

---

**3.** Claimant also stated that she underwent an MRI at the Nova Center because she is claustrophobic and needed to have an open MRI. She was unsure when the MRI was done. Claimant explained that, "I went there and had the MRI done and then I, in turn, get a bill." Notes of Testimony, August 15, 2005, at 17.

**4.** Claimant also offered into evidence a Utilization Review Determination dated Febru-ary 2001. The review concerned a pair of orthopedic shoes and a pair of sneakers prescribed by Dr. Steven Boc, that were found by the reviewer to be reasonable and necessary treatment. Exhibit C–4.

**5.** Employer offered into evidence a printout of the medical payments it made on behalf of Claimant. Exhibit D–1.

proper forms with the proper documentation, no evidence as to when the bills were submitted *and no evidence that the bills were improperly denied by Employer.* Claimant's testimony, although credible, was vague and did not clarify these issues. Furthermore, the Utilization Review Determination cannot be definitively correlated with Exhibit C–2, considering that C–2 was issued four years after the Utilization Review Determination with a different provider prescribing the product.

WCJ Opinion at 3–4, Conclusion of Law No. 2 (emphasis added). As to the alleged underpayment of wage loss benefits, the WCJ again concluded that Claimant failed to prove her case. The documents she submitted without explanation of the notations thereon were "vague." WCJ Opinion at 4, Conclusion of Law No. 3. Claimant appealed, and the Board affirmed. Claimant now petitions for this Court's review.[6]

On appeal, Claimant raises two issues. First, Claimant argues that the WCJ erred in *sua sponte* raising a defense for Employer, *i.e.,* that Claimant failed to meet her burden because she did not show that the medical invoices in question had ever been submitted to Employer on the correct form. Second, Claimant argues that once she introduced any evidence of violations of the Act by Employer, the WCJ should have shifted the burden to Employer. It was error, Claimant asserts, for the WCJ not to require Employer to prove compliance with the Act.

■ It is axiomatic that when a claimant files a petition seeking an award of penalties, the claimant bears the burden of proving that a violation of the Act occurred. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission),* 745 A.2d 1282, 1288 (Pa.Cmwlth.2000). An employer or insurer is only responsible for paying medical bills that are related to the work-related injury. In order for an employer to become obligated to pay a medical bill, that bill must be properly submitted. Section 306(f.1)(5) of the Act, 77 P.S. § 531(5), directs that "providers shall submit bills and records in accordance with the provisions of this section." Sections 127.201 and 127.202 of the Medical Cost Containment Regulations, 34 Pa.Code §§ 127.201–127.202, require providers to submit requests for payment of medical bills on either the HCFA Form 1500 or the UB92 Form.[7] Employers are not required to pay for the treatment billed until the bill is submitted on one of those forms. In addition, Section 127.203 of the Medical Cost Containment Regulations, 34 Pa.Code § 127.203, requires that providers submit medical reports on appropriate forms explaining their treatment, and insurers are not obligated to pay for treatment until they receive such a report.[8]

---

**6.** This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

**7.** 34 Pa.Code § 127.201 states, in relevant part, as follows:

(a) Requests for payment of medical bills shall be made either on the HCFA Form

1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims....

34 Pa.Code § 127.202 states, in relevant part, as follows:

(a) Until a provider submits bills on one of the forms specified in § 127.201 (relating to medical bills—standard forms) insurers are not required to pay for the treatment billed.

**8.** 34 Pa.Code § 127.203 states, in relevant part, as follows:

We consider, first, Claimant's contention that the WCJ improperly raised, *sua sponte*, the fact that bills alleged to be owed by Employer were not submitted in or on the proper form or with the proper documentation. To make her case that Employer violated the Act, Claimant offered testimony and documentary evidence. Unfortunately for Claimant, her own documents made the case for Employer because none of them constituted invoices in the form required by the Medical Cost Containment Regulation. Accordingly, these documents supported only one conclusion: that they were not required to be paid by Employer as work-related. This is not a case of a tribunal raising an issue but, rather, a tribunal evaluating the evidence presented by a litigant.[9]

The only invoice actually received by Employer was the Hanger invoice for two pairs of shoes. The Hanger invoice does not list the date of injury or refer to a work injury, and it identifies Dr. Stanley Boc, who has never treated Claimant, as the provider.[10] It was not presented on the HCFA form, and it was not accompanied by the required provider's report. Given these deficiencies, Employer reasonably inferred that the invoice for the shoes was not related to a work injury and so stated to Claimant.[11] It is not the burden of an employer to examine a medical invoice, not submitted on the form required to be used in workers' compensation claims and lacking even a date of work injury, and then puzzle out whether the claim might be for a work-related injury.[12] Rather, the Act and regulations place the burden upon the claimant to submit medical invoices on the proper form and with all the information needed to permit an employer to ascertain readily that the billed treatment is related to the work injury. Claimant failed to do this.[13]

(a) Providers who treat injured employees are required to submit periodic medical reports to the employer, commencing 10 days after treatment begins and at least once a month thereafter as long as treatment continues. If the employer is covered by an insurer, the provider shall submit the report to the insurer.
(d) If a provider does not submit the required medical reports on the prescribed form, the insurer is not obligated to pay for the treatment covered by the report until the required report is received by the insurer.

9. The dispositive legal issue in this case was whether Claimant's "bills were improperly denied by Employer." WCJ Opinion at 3–4. This issue was raised by Claimant's penalty petition and not by the WCJ. The majority does not "ignore" Claimant's assertion that the WCJ *sua sponte* raised another issue; rather, the majority expressly rejects it. Part of the WCJ's inquiry was to determine whether the documents proffered by Claimant could support the legal conclusion that Employer violated the Act. Citing deficiencies in documentary evidence is the job of a tribunal required to render a reasoned decision.

10. Dr. *Steven Boc* was Claimant's provider.

11. As for the favorable utilization review from February 2001 concerning two pairs of shoes recommended by Dr. Steven Boc, we agree with the WCJ's determination that this review decision is irrelevant. It cannot be connected to the Hanger invoice, issued four years after *the utilization review determination and* which states that a different provider is prescribing the product.

12. Had Employer had taken this step, it still could have denied the Hanger invoice for another reason, *i.e.*, that it was on the wrong form.

13. The dissent conjectures that "there would have been no penalty petition, because if Claimant knew why her Hanger invoice was not paid, she would have submitted it 'correctly.'" Dissent at 4. Claimant was told by Sedgwick CMS why her bill was not paid. The bill did not have a date of work injury or an employer's report; accordingly, Sedgwick CMS concluded that it was not a medical claim for a work injury. Along with that explanation, Sedgwick CMS provided its phone number. It is mystifying that Claimant did not simply resubmit the claim with the

The other documents offered into evidence by Claimant were also found by the WCJ not to be proper invoices because they were not on the correct form nor with the requisite provider report. Further, additional reasons support the WCJ's decision on these so-called invoices.

Regarding the bill for the MRI, Claimant was required to show that Employer received a copy of the bill and refused to pay it. All Claimant offered was a bill from a collection agency that did not list a date of injury, a date of service or even that an MRI had been performed, let alone on the foot that was covered by the NCP. There was no evidence that an MRI invoice was ever even seen by Employer, and the Act does not require an employer to pay a medical bill it has never seen.

As to whether the prescription for Naftin CR was improperly rejected, Claimant submitted only an Eckerd Drug document with her name, the name of the drug and the statement "Primary Payer Claim De-

nied." The invoice does not list the cost, although Claimant testified that she "thought" the cream cost $60. Employer could not pay an invoice that lacks a specific amount owed. Further, we agree with the WCJ that, again, there is no proof whether Employer actually received a bill for Naftin CR or proof that this item was related to her work injury.

■ Next, as to the issue of Employer's alleged underpayment of weekly wage benefits, the WCJ found the evidence was vague, at best, as to when any underpayment began. The WCJ observed that even though there might have been a discrepancy between what Claimant was paid for the period ending July 1, 2001, and August 5, 2005, no evidence was offered as to what amount she was actually being paid and why it was incorrect. We agree. Because Claimant provided insufficient evidence to meet her burden of proving that Employer unilaterally reduced her workers' compensation benefits, the WCJ prop-

missing information or call Sedgwick CMS if she did not know how to do this.

Claimant did not show that Sedgwick CMS's conclusion was wrong, let alone a violation of the Act. The Act, not the majority, requires compensation claims to be submitted on the correct form and with the necessary information. The premise to the dissenting opinion seems to be that Claimant submitted a perfect claim save for using the "technical" form. To the contrary, Claimant submitted a woefully deficient claim. The content was so lacking that Employer, by Sedgwick CMS, rejected it as not a work-related claim. If Sedgwick CMS believed the claim was not work-related, how could it also reject the claim as being on the wrong form?

The dissent's other unfounded premise is that Employer "admitted" that it "improperly denied" the Hanger invoice by later paying it. Dissent at n. 3. This is a circular and flawed argument. First, the record does not show that Employer paid the Hanger invoice in question. The dissent relies on Exhibit D-1, a printout of medical payments made by Employer on behalf of Claimant. However, there

is no testimony to relate Exhibit C–2 and D–1. The dissent infers that an invoice shown on D–1 to be paid on June 6, 2005, was Exhibit C–2, even though the amounts do not correspond. Assuming the dissent's inference is correct, it does not prove a violation because there is nothing to show that the payment on June 6, 2005, was not timely. Second, even if Employer did later pay the Hanger invoice, there is no evidence to explain the reason. For all we know, Employer paid it because Claimant corrected the deficiencies noted by Sedgwick CMS on Exhibit C–2. Third, an employer who voluntarily pays a bill is not admitting to any improper conduct, and, in this case, Employer never admitted to any wrongful conduct.

Finally, this is not a case governed by *Kuemmerle v. Workers' Compensation Appeal Board (Acme Markets, Inc.)*, 742 A.2d 229 (Pa.Cmwlth.1999). There is absolutely no evidence that Employer allowed Claimant to submit her invoices on the wrong forms and without the required documentation, such as a date of injury. Claimant does not even make this contention.

erly denied Claimant's request to find that Employer was not paying the correct weekly wage benefit.

Based on the foregoing, we determine that Claimant failed to submit sufficient evidence to prove that Employer violated the Act. Because Claimant never met her initial burden of proving a violation, the burden never shifted to Employer to present evidence that it did not violate the Act.[14] We hold that the WCJ did not err in this regard.

For these reasons, the Board's order is affirmed.

## ORDER

AND NOW, this 1st day of June, 2007, the order of the Workers' Compensation Appeal Board dated October 26, 2006, in the above captioned case is hereby affirmed.

## DISSENTING OPINION BY Judge PELLEGRINI.

My disagreement with the majority involves little, if any, money. It is limited to whether the matter should be remanded to the WCJ to decide whether a penalty should be imposed due to Employer's failure to promptly pay a bill for $440 for two pairs of shoes. The majority is probably doing Claimant a favor because what is involved is so miniscule that it may be more trouble than it is worth to even seek penalties on remand. But while the "principal" may be small, the "principle" involved is important—cases should only be resolved on the issues raised.

The facts are simple. In 1991, Claimant suffered a work-related injury to her "left foot big toe" causing, among other things, a difference in the size of her feet. Employer accepted her injury by a notice of compensation payable.[1]

Claimant then filed a penalty petition because Employer refused to pay a medical bill for two pair of shoes that were ordered by her physician.[2] Regarding the bill for the shoes, she testified before the WCJ that the bill was from Hanger Prosthetics and Orthotics, Inc. (Hanger) and was for a pair of orthopedic shoes and for a pair of sneakers. She presented the original bill into evidence on which appeared her name, the insurance ID# , the referring physician—Stanley E. Boc, DPM (Dr. Stanley Boc)—the items ordered and price, invoice date, date of service and patient ID. On the front of the bill was written "not work related" and "see attached." Attached to the bill was another form from Sedgwick CMS showing that the bill was being returned for the following reasons: "We have not received an *Employer's Report of Occupational Injury or Disease,* please contact the employee or employer for additional information;" "Insured advised this is not a work related injury and/or they have no report;" "No date of injury on file."

Before the WCJ, the only issue argued by Employer was whether Dr. Stanley Boc

---

14. Once a claimant makes a *prima facie* case that a violation of the Act has occurred, the burden then shifts to the employer to prove no violation. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission),* 745 A.2d 1282, 1288 (Pa. Cmwlth.2000).

1. For a full background of this case, *see Sims v. Workers' Compensation Appeal Board (School District of Philadelphia)* (No. 3071 C.D.2002, filed 9 September 2003).

2. Once it is determined that an employer is liable for an injury under the Act, the employer is required to pay a claimant's reasonable and necessary medical expenses that are causally related to the injury. *Martin v. Workers' Compensation Appeal Board (Red Rose Transit Authority),* 783 A.2d 384 (Pa.Cmwlth. 2001). Section 435 of the Act, 77 P.S. § 991(d), authorizes the imposition of penalties for violations of the Act.

was actually the physician who prescribed the shoes for the bill in question,[3] not whether Employer was denying payment of the bill for the shoes. On redirect, Claimant clarified that her physician was Stephen Boc, DPM, Stanley Boc's brother, and that she had never treated with Stanley Boc. Claimant also offered into evidence a Utilization Review Determination reviewing a recommendation by Stephen Boc for a pair of orthopedic shoes and one pair of sneakers.

Even though never raised by Employer, the WCJ denied Claimant's penalty petition regarding the shoes because it was not presented on the correct forms, supposedly either an HCFA Form 1500 or the UB92 Form. The majority affirms, finding that "it is not the burden of the employer to examine a medical invoice not presented on the 'right' forms required to be used in workers' compensation claims, and then puzzle out whether the claim might be work-related injury." It then goes on to state that "the Act and regulations place the burden upon the claimant to submit medical invoices on the proper form and with all the information needed to permit an employer to ascertain that the billed treatment is related to the work injury."

I disagree because the majority ignores that the WCJ raised this issue *sua sponte*.[4] If Employer had rejected the bill because it was not on the proper form, it may have

3. The questioning, *in toto*, by the Employer regarding the shoes was as follows:

> Q: As far as the shoes go, it says on the shoe invoice here that a Doctor Stanley Bock ...
> A: Stephen Bock is my doctor.
> Q: That would be a typo, then, what they have there, Stanley Bock?
> A: That's my doctor's brother.
> Q: Did you ever see Stanley for anything?
> A: No.
> Q: Do you have any knowledge as to whether this was submitted by Doctor Bock to the insurance?
> A: When I go to Hanger, my doctor gives me a scrip with his name on there and I take the scrip and I give them the scrip. I've been going there for years. That's where I go.
> You brought that to my attention, because all I saw was "Bock". So I didn't really, you know—but that the way—I usually just take a scrip that my doctor writes out and I gave it to them because they have a file, and that's where I usually go.
> (Reproduced Record at 18.)

4. In footnote 9, the majority responds to the dissent by admitting that the issue was never raised, but shifts its holding by boldly stating that the WCJ can do that because the WCJ can, *sua sponte*, raise that issue because "citing deficiencies in the documentary evidence is the job of any factfinder." The unattended corollary to the majority's holding is that we would now be allowed to reverse a factfinder's determination on appeal if the documentary evidence is insufficient, even if not raised simply because the factfinder did not do his or her job.

If that is not sufficiently disconcerting, the majority's holding requires that medical bills be on the prescribed forms even if the employer does not require them on the prescribed forms. In this age of paperless office and electronically-transmitted bills, while it may warm the cockles of a regulator's heart, the majority's holding is simply impractical.

Moreover, what the majority is blind to is that a claimant meets his or burden of proving that penalties may be in order when it is shown that he or she submitted a bill to the employer that was not promptly paid. The burden then shifts to the employer to set forth a legitimate reason why the bill was not promptly paid. If that reason is insufficient, penalties may be awarded at the WCJ's discretion. *See* footnote 2. But if an employer does not require that certain information be submitted with a bill, it cannot later avoid penalties for that reason. *See Kuemmerle v. Workers' Compensation Appeal Board (Acme Markets, Inc.)*, 742 A.2d 229 (Pa.Cmwlth. 1999) (provider's failure to submit required written reports to insurance carrier did not excuse employer from penalties for failure to pay bills because it did not require medical reports in all instances for payment of medical services.)

served as a basis for rejecting payment. More likely, though, there would have been no penalty petition, because if Claimant knew why her bill was not paid, she would have then submitted it "correctly." Ignoring all of that, the majority assumes that employers automatically salute and require medical bills to be on an "alphabet form" just because regulators say so. What that assumption ignores is that Claimant knew how to get her bills paid— over the years she submitted 341 bills, including bills for shoes, totaling $113,053.91.[5] By raising the issue *sua sponte*, the WCJ deprived Claimant of the opportunity to prove that Employer did not require bills on prescribed forms. Perhaps Employer just found it easier to take the bill, enter the Claimant's name in its computer system, find a claimant's account just like every hospital, doctor's office and even what this court does when accessing a claimant's records. We will never know because the issue was not raised.

Accordingly, I respectfully dissent.

Finally, there may be a good answer as to why Claimant did not call, fax, phone, write or visit Employer to find out why her bills were not paid, but again, we'll never know, because the majority is now raising an issue that was not raised by the Employer or the WCJ below.

5. In footnote 13, in further response to the dissent, the majority states that the dissent does not explain why Employer improperly denied the shoe bill.

What the majority ignores is that Employer *subsequently paid the bill.* This is no surprise, considering that a Utilization Review finding, albeit 4 years earlier, found that shoes of this type were reasonable and necessary medical treatment. (*See* Exhibit C–2, a bill from Hanger Orthopedic, with a March 16, 2005 date of service and Exhibit D–1 listing a payment of a bill from Hanger Orthopedic with that date of service on June 6, 2005, while the hearing in this proceeding was underway. I recognize that the bill was for $440 and payment of the bill was for $316, but attribute the difference to the fact that medical bills are paid in accordance with the cost containment provisions of the Act. *See* 77 P.S. § 531).

More importantly, though, it is not our responsibility to explain why an employer paid or did not pay a bill. Our responsibility is to decide whether an employer's defense for non-payment was sufficient. Here, to repeat, Employer never ever alleged before the WCJ or this Court that the bill was not work-related or that it was submitted on the wrong form.