# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna Marie Price,        :
           :
           Petitioner      :
           :
           v.          :    No. 374 C.D. 2015
           :
Workers' Compensation Appeal Board   :    Submitted: September 18, 2015
(School District of Philadelphia),      :
           :
           Respondent    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: January 8, 2016**

Donna Marie Price (Claimant), previously known as Donna Sims, petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) Decision granting Claimant's Petition to Review Compensation Benefits (Review Petition), granting, in part, Claimant's Penalty Petition, and granting the School District of Philadelphia's (Employer) Petition to Modify/Suspend Compensation Benefits (Modification/Suspension Petition). On appeal, Claimant argues that the WCJ erred and abused his discretion by: (1) granting Employer's Modification/Suspension Petition based on a specific loss of Claimant's entire left

foot when the issue before the WCJ was only the specific loss of Claimant's left big toe; (2) failing to re-open the record so that Claimant could introduce evidence to rebut the WCJ's finding of specific loss of Claimant's entire left foot;[1] (3) granting Employer credit for the specific loss of her left foot from the date of the injury instead of the date the description of her injury was expanded to include her left foot; (4) denying her Penalty Petition when Employer violated the Workers' Compensation Act[2] (Act) by unilaterally reducing Claimant's weekly compensation rate; and (5) denying Claimant's request for unreasonable contest fees. Upon review, we affirm.

## I. Background

This case has a long and convoluted history which includes two previous appeals to this Court. It began on November 7, 1991, when Claimant's left big toe struck a raised electrical outlet in the course and scope of her employment as a food service worker with Employer. On February 5, 1992, Employer issued a Notice of Compensation Payable (NCP) accepting a "LEFT FOOT BIG TOE" injury. (NCP, Bureau's Hr'g Ex. B-1.) The NCP states that payments will begin on November 8, 1991 at a weekly compensation rate of $148.34. Employer issued an Amended NCP on February 5, 1993, retroactively adjusting Claimant's weekly compensation rate to $145.33. (Amended NCP, Bureau's Hr'g Ex. B-2.)

---

[1] Claimant argues that the WCJ erred in denying her "Petition to Reopen the Record" so that she could introduce new evidence on the issue of whether she suffered a specific loss of her entire left foot; however, no such petition appears in the certified record and the WCJ's Decision does not address such a petition.

[2] Act of June 2, 1915, P.L. 736, as amended, 72 P.S. §§ 1-1041.4, 2501-2708.

2

Between 1994 and 2007, Claimant and Employer were involved in a protracted litigation, in which Employer unsuccessfully attempted to terminate Claimant's benefits and Claimant sought penalties multiple times against Employer.[3] The instant matter commenced on October 13, 2011, when Employer filed its Modification/Suspension Petition. Therein, Employer alleges that, as of September 7, 2011, Claimant's injury was resolved into a specific loss. On

---

[3] On October 6, 1994, Employer filed a termination petition alleging that, as of May 6, 1994, Claimant had fully recovered from her injuries. For reasons that are unclear in the record before us, the matter was not acted upon until seven years later. In the interim Claimant filed a penalty petition on December 19, 1994, alleging that Employer violated the Act by unlawfully reducing her weekly compensation rate by filing the Amended NCP. The penalty petition was withdrawn by Claimant and the withdrawal was accepted by a WCJ. On January 3, 1997, Claimant once again filed a penalty petition alleging that Employer violated the Act by varying the amount of weekly compensation through the Amended NCP. (Penalty Petition, January 3, 1997, Bureau's Hr'g Ex. B-5.) The record before us is unclear on the final disposition of this penalty petition.

A WCJ granted Employer's October 6, 1994 termination petition on October 18, 2001, which the Board affirmed on December 2, 2002. In a decision filed September 9, 2003, this Court reversed and held that the evidence did not support a finding that Claimant had fully recovered from her injury. Sims v. Workers' Compensation Appeal Board (The School District of Philadelphia) (Pa. Cmwlth., No. 3071 C.D. 2002, filed September 9, 2003), slip op. at 8 (Bureau's Hr'g Ex. B-7).

Claimant filed another penalty petition in November 2004, alleging that Employer violated the Act by refusing to approve certain medications and by failing to provide payment for reasonable medical expenses. At a hearing before a WCJ, Claimant amended her penalty petition to include an averment that Employer violated the Act by failing to pay Claimant the full amount of indemnity benefits to which she was entitled. (WCJ Decision at 1, March 10, 2006, Bureau's Hr'g Ex. B-8). Upon review, the WCJ found, in relevant part, that Claimant failed to meet her burden of proving that she was not receiving all her entitled benefits because "[w]hile it appears that there might be a discrepancy between the amounts Employer paid Claimant for the period ending July 1, 2001 and August 5, 2005, the evidence is vague as to when any underpayment began." (WCJ Decision, March 10, 2006, Conclusions of Law ¶ 3, Bureau's Hr'g Ex. B-8.) The Board affirmed and on appeal, we upheld the WCJ's Decision finding Claimant's evidence insufficient to support her claim. Sims v. Workers' Compensation Appeal Board (The School District of Philadelphia), 928 A.2d 363, 369 (Pa. Cmwlth. 2007).

December 7, 2011, Claimant filed her Review Petition alleging that the description of her injury should be amended to include "aseptic necrosis, 1st metatarsal head, left foot, resulting in multiple bilateral lower extremity complications and consequential injuries." (WCJ Decision at 1.) Claimant then filed a Penalty Petition on January 18, 2012 alleging that Employer violated the Act and its rules and regulations. Answers were filed to the Petitions and the Petitions were consolidated and assigned to the same WCJ for hearings and disposition.

## II. Proceedings Before the WCJ

In support of its Modification/Suspension Petition, Employer submitted the expert medical deposition testimony of Paul Hornstein, M.D. Claimant testified on her own behalf before the WCJ in support of both her Review and Penalty Petitions and submitted the deposition testimony of her treating podiatrist, Steven F. Boc, D.P.M., in support of her Review Petition.

Dr. Hornstein, a board certified orthopedic surgeon with a specialty in foot and ankle surgery, performed an independent medical examination of Claimant on behalf of Employer and testified as follows. He saw Claimant three times: once on August 6, 2008; once on May 19, 2010; and a final time on September 7, 2011. On Claimant's first visit, Dr. Hornstein took Claimant's medical history and reviewed her medical records. Dr. Hornstein discovered that Claimant had multiple surgeries subsequent to her November 7, 1991 injury that resulted in a partial amputation of Claimant's big toe on her left foot and a mid-foot and ankle fusion. Dr. Hornstein also discovered that a few months prior to Claimant's November 7, 1991 injury, Claimant underwent a left foot bunionectomy surgery on July 10,

4

1991. Claimant told Dr. Hornstein that she had fully recovered from the bunionectomy prior to the November 7, 1991 work incident. A CAT scan taken on December 24, 1991, showed a "defect in the top or the dorsal part at the first metatarsal bone, which would be where the [Claimant]'s bunion surgery was performed." (Hornstein's Dep. at 15, Employer's Hr'g Ex. D-1.)

Dr. Hornstein opined that:

[Claimant] had multiple surgeries, severe hypersensitivity, with respect to the first toe of her left foot, it's basically not functional at this time. She's had multiple surgeries and significant pain all about her ankle, the middle part of her foot, her hindfoot, and that has rendered her first toe which was fused, now nonfunctional . . . . She also had a partial amputation of the distal tip of her toe, which obviously, that part of her toe, she can't use because it's no longer present. And so … she lost the use of her first great toe of the left foot.

(Hornstein's Dep. at 33-34.) Dr. Hornstein acknowledged that Claimant's records reveal a diagnosis of avascular necrosis, but Dr. Hornstein opined that, if Claimant has avascular necrosis, it was not related to the November 7, 1991 injury as the trauma was not severe enough to cause the condition. Dr. Hornstein also noted that Claimant's records reveal a diagnosis of complex regional pain syndrome (CRPS). In Dr. Hornstein's opinion, Claimant's CRPS diagnosis is not connected to Claimant's left foot big toe injury because Claimant was not diagnosed with CRPS until 2006. In Dr. Hornstein's opinion, the CRPS related to Claimant's work injury to her left big toe would have developed three to six months after the injury, not fifteen years later.

5

Claimant testified in support of her Review Petition at a January 10, 2013 hearing before the WCJ as follows. Claimant was injured when, while working as a food service worker for Employer, she walked out of a freezer holding a tray of food and her left foot struck a raised electrical outlet. Claimant immediately stopped working and has not returned to work since. In the summer before the incident, Claimant had surgery to remove a bunion. Claimant's bunion problem had resolved at the time of the November 7, 1991 incident.

Claimant has developed other symptoms in both feet and ankles in the years since her work injury. In addition to the injury to her left foot and toe, Claimant had surgery done to her right foot due to injuries resulting from her compensating for her injured left foot. When asked to describe the condition of her left foot and ankle Claimant responded:

> I'm not a medical – I'm not a podiatrist. So I can't go into specifics. But the only thing I can basically do is what I personally have gone through physically and what I have lost physically due to the loss of multiple surgeries, due to the los[s] of my limb, due to the loss of the ankle, due to the loss of the arch of my foot. It's a challenge.

(Hr'g Tr. at 16, January 10, 2013.) Claimant testified that she is in constant pain, walks with a limp, and cannot wear regular shoes. The pain is to her whole left foot and to her left big toe. Although she has used medical devices to help her walk through the years, no treatment or device has enabled her to walk the way she did prior to her injury.

In support of her Penalty Petition, Claimant submitted documentary evidence and testified to the compensation she received through the years.

Relevant to the instant appeal, Claimant submitted a paystub dated July 6, 2001 showing that Claimant received net bi-weekly compensation of $237.44.[4] (Claimant's Hr'g Ex. C-3.) Claimant also submitted a payout screen produced by Employer and sent to Claimant. (Claimant's Hr'g Ex. C-5.) The payout screen shows that Claimant received bi-weekly net compensation of $232.51 from October 2003 to February 2005.[5] (Claimant's Hr'g Ex. C-5.) Claimant testified that she began receiving this lower amount of $232.51 on September 9, 2003, which was after this Court reversed a Board's decision granting an earlier termination petition and reinstated benefits. Claimant continues to receive bi-weekly net compensation of $232.51.

Dr. Boc, a board certified podiatrist with a specialty in foot and ankle surgery, testified on behalf of Claimant as follows. Claimant has been in his care for twenty-two years. Dr. Boc performed a bunionectomy to Claimant's left foot prior to Claimant's work injury and she was released to full duty without restriction after a short recovery period. Dr. Boc met with Claimant on November 14, 1991 after her work injury. Claimant was exhibiting serious pain, swelling, decreased range of motion, and muscle guarding. Dr. Boc diagnosed her at the time with a trauma injury and treated her with casting below the knee, crutches, anti-inflammatories, and pain medication. Dr. Boc compared an x-ray taken shortly after the November 7, 1991 incident and the x-rays taken after her

---

[4] The exhibit shows that Claimant was paid gross compensation of $296.80 minus $59.36 for attorney fees. (Claimant's Hr'g Ex. C-3.)

[5] This exhibit shows that Claimant was paid gross compensation of $290.64 minus $58.13 for attorney fees. (Claimant's Hr'g Ex. C-5.)

bunionectomy, and was concerned that Claimant had a possible osteochondral fracture or avascular necrosis. Dr. Boc's concern was confirmed on January 24, 1992 when he observed an avascular necrosis during a surgical procedure. Dr. Boc conducted other surgeries on Claimant's left lower extremities in order to reduce her pain. Due to Claimant's compensating for her injuries by putting excess weight on her right foot, Claimant underwent a surgical procedure on her right foot in 1999. Claimant's problems with her right foot have since been resolved.

Dr. Boc opined that Claimant has "lost the function of her great toe, as well as the first [metatarsophalangeal joint]. She has a stiff antalgic gait. And she has symptoms of chronic pain syndrome." (Boc's Dep. at 38, Claimant's Hr'g Ex. C-8.) He further opined, with a reasonable degree of medical certainty, that all his treatments on Claimant were directly related to the pathology problems caused by her work injury.

On cross examination Dr. Boc testified that, for all intents and purposes, Claimant has lost the use of her left big toe. Dr. Boc also opined, "[w]ithin a reasonable degree of medical certainty, [that] she has lost the use and function of her left foot." (Boc's Dep. at 57.) On redirect, Dr. Boc reiterated his position and stated that "[Claimant] has severe limitation. There is no function left to her left foot and ankle." (Boc's Dep. at 58.) In Dr. Boc's opinion, Claimant's prognosis is poor and her problems with her left toe and ankle are essentially irrevocable.

Upon review of the testimonies the WCJ found Claimant credible, except with regard to her testimony that her injury included her right foot in addition to

her left. The WCJ also found Claimant's medical expert, Dr. Boc, credible in all ways other than with regard to Claimant's right foot condition. To the extent that Dr. Hornstein's testimony conflicted with Dr. Boc's testimony, the WCJ found Dr. Boc more credible due to his long term relationship with Claimant, extensive examinations, and the fact that Dr. Boc performed numerous surgical procedures on Claimant.

With regard to Employer's Modification/Suspension Petition, the WCJ made the following relevant findings and determinations.

14. . . . In the present case, this Judge finds that the Claimant permanently lost the use of her left foot for all practical intents and purposes as of February 5, 2013 primarily based upon the credible testimony of Dr. Boc. Of particular significance in making this determination was the following exchange from the deposition of Dr. Boc:

> Q. What about the rest of her left foot and ankle? Do you have an opinion, within a reasonable degree of medical certainty, as to whether Ms. Price has also lost the use of her left foot?
>
> A. Yes. Within a reasonable degree of medical certainty, she has lost the use and function of her left foot. *See* Deposition of Dr. Boc at 57.

Dr. Boc further described the condition of the Claimant's left foot as follows: "She has severe limitation. There is **no** function left to her foot [left] and ankle." *Id.* at 58. Emphasis added. Further, this Judge finds that the specific loss to the Claimant's left foot is not separate and distinct from the original injury to her big toe on the left foot. In making this specific loss determination, this Judge also considered the credible testimony of the Claimant, portions of the testimony of Dr. Hornstein and the complete medical record. Of particular significance, the Claimant herself seemed to agree to the specific loss of her left foot when she testified as follows:

9

I'm not a medical - I'm not a podiatrist. So I can't go into specifics. But the only thing I can basically do is what I personally have gone through physically and what I have lost physically due to the loss of multiple surgeries, *due to the los[s] of my limb*, due to the loss of the ankle, due to the loss of the arch of my foot. It's a challenge. *Id.* at 16. Emphasis added.

Accordingly, the Claimant is awarded 250 weeks of benefits for the specific loss of the left foot. *See* Section 306(c)(4) of the Act[, 77 P.S. § 513(4)]. Additionally, the Claimant is awarded a healing period of 25 weeks due to the specific loss of her left foot. *See* Section 306(c)(25) [of the Act, 77 P.S. § 513(25)]. Since the Claimant has already received in excess of 275 weeks of disability benefits relative to the 1991 work injury, no further indemnity benefits are due and payable.

(WCJ Decision, Findings of Fact (FOF) ¶ 14) (emphasis in original).)

The WCJ found, with regard to Claimant's Review Petition:

16. . . . In the present case, the Claimant's work injury of November 7, 1991 is described in the NCP as "left foot big toe." Based upon the credible medical opinions of Dr. Boc as discussed above, this Judge finds that the description of the work injury should be enlarged to include "avascular necrosis and chronic regional pain syndrome of the left foot." In making this determination, this Judge considered the mechanism of injury, the credible medical records, the imaging studies, the operative reports and the credible testimony of Dr. Boc and the Claimant. However, this Judge specifically rejects any suggestion that the Claimant's work injury includes an injury or disorder to the right foot as explained above.

(FOF ¶ 16.)

Finally, the WCJ made the following findings and determinations with regard to Claimant's Penalty Petition:

10

17. . . . [T]his Judge finds no violation of the Act regarding the Employer's payment of indemnity benefits to the Claimant. While it is true that the Employer unilaterally reduced the amount of the Claimant's indemnity benefits in 2003 from a biweekly amount of $237.44 to $232.51, this Judge finds that . . . the "reduced" indemnity amount is consistent with the amended NCP issued on February 5, 1993 (which reflects a weekly compensation rate of $145.33). An Employer is permitted to unilaterally issue a NCP. Rather than committing a violation of the Act, it appears that the Employer actually may have overpaid the Claimant indemnity benefits based upon the original 1992 NCP until 2003, when it modified benefits to the amended rate. In finding no penalty, this Judge also considered that the Claimant failed to demonstrate that the weekly compensation rate stated on the amended NCP is materially incorrect nor did the Claimant file a petition seeking to review her wages.

18. Regarding the alleged failure to pay medical bills, this Judge finds that the Claimant properly submitted the required medical reports, bills and Health Insurance Claim Form for Dr. Boc's surgery on June 17, 2011 at Hahnemann University Hospital based upon the credible testimony of Dr. Boc and the attachments to his deposition. This Judge finds that the surgery was causally related to the Claimant's accepted left foot injury. Thus, the Employer's failure to pay for this procedure constitutes a violation of the Act. This Judge orders the Employer to pay for the costs of the June 17, 2011 surgery and awards a penalty of ten percent (10%) for the unpaid and due balance with statutory interest.

. . .

22. Based upon the totality of all of the evidence presented, I find that the employer established that it continuously engaged in a reasonable contest of the case within the meaning of Section 440 of the Workers' Compensation Act, 77 P.S. [§] 996(a). Additionally, I further find that the employer's contest was prompted to resolve a genuinely disputed issue and not to merely harass the claimant. *See City of Philadelphia v. [Workers' Compensation Appeal Board] (Cospelich)*, 893 A.2d 171 (Pa. Cmwlth. 2006), *appeal denied*, [] 923 A.2d 411 ([Pa.] 2007).

(FOF ¶¶ 17, 18, 22.)

11

Accordingly, the WCJ granted Employer's Modification/Suspension Petition, granted Claimant's Review Petition and granted, in part, Claimant's Penalty Petition. Claimant appealed the WCJ's Decision with regard to the determinations on Employer's Modification/Suspension Petition and Claimant's Penalty Petition to the Board, which affirmed. Claimant subsequently filed the instant Petition for Review with this Court.[6]

## III. Claimant's Appeal

### A. Due Process

On appeal to this Court, Claimant first argues that the WCJ violated her due process rights by determining that Claimant's injuries resolved into a specific loss of her *left foot* when Employer only provided notice of a claim of specific loss of her *big toe on her left foot*. Claimant argues that Employer only presented evidence supporting a finding that Claimant's injury to her left big toe resolved into a specific loss and that Employer only asserted its argument with regard to the entire left foot in its brief to the WCJ after the record was closed. Claimant contends that if Employer wanted to assert that Claimant lost the use of her entire left foot, it should have amended its Modification/Suspension Petition accordingly. Claimant argues that, because Employer only asserted its argument regarding her entire left foot after the record was closed, Claimant was subjected to unfair

---

[6] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary finding of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

12

surprise in violation of her due process rights and the record should be re-opened so that she may present evidence rebutting Employer's assertion.

Upon review, we discern no due process violation in the WCJ's finding of specific loss to Claimant's entire left foot. Employer filed a Modification/Suspension Petition alleging that her injury had resolved into a specific loss. Claimant was, therefore, on notice that Employer requested a suspension of benefits for a specific loss of her injured big toe on her left foot. Claimant filed a Review Petition seeking to amend the description of her injury to include her entire left foot, testified in support thereof, and presented the testimony of her medical expert, Dr. Boc. Her medical expert credibly opined, when questioned by Employer, that Claimant lost all use of her left foot. Thus, during the litigation, Claimant's Review Petition, medical evidence, and testimony created the legal and factual predicate to support the amendment of her injury to include her left foot. At the same time, the WCJ found that the credible evidence presented by Claimant also demonstrated that her injury had resolved into a specific loss and that she had lost the use of her left foot. Like the Board, we "see no error in this finding or any reason to remand the case to allow Claimant to present evidence which was available at the time of the original litigation on these Petitions." (Board Op. at 6.) Moreover, "strictness of pleadings in not required in workers' compensation cases, and in the interest of judicial economy, the WCJ was empowered to take appropriate action based on the evidence presented." Krushauskas v. Workers' Compensation Appeal Board (General Motors), 56 A.3d 64 (Pa. Cmwlth. 2012) (affirming a WCJ's suspension of benefits where the employer did not file a suspension petition).

13

Based on the foregoing, we conclude that Claimant had notice of Employer's request for a suspension of benefits based on a specific loss of her left big toe, and the medical and factual evidence which she presented, which ultimately supported a suspension based on the specific loss of her left foot. The WCJ acted within his discretion to conclude that Claimant's injuries have resolved into a specific loss of her entire left foot. Accordingly, there was no due process violation and we decline Claimant's request to re-open the record on this matter.

**B. Substantial Evidence**

Claimant next contends that the WCJ erred by dismissing undisputed medical evidence supporting a conclusion that Claimant's injuries to her left foot were separate and apart from her left big toe injury. Claimant contends that Dr. Hornstein did not address Claimant's other injuries and Dr. Boc's testimony supports a finding that Claimant is suffering from a disability separate and distinct from her left big toe injury.

When an employer asserts that a claimant's total disability has resolved into a specific loss of a body part, the employer bears the burden to "show that the claimant now suffers only the specific loss and that the injury does not extend beyond that loss." Reading Anthracite Company v. Workmen's Compensation Appeal Board (Earley), 549 A.2d 616, 617 (Pa. Cmwlth. 1988). We reviewed the standards applicable to specific loss in Jacobi v. Workers' Compensation Appeal Board (Wawa, Inc.), 942 A.2d 263, 267-68 (Pa. Cmwlth. 2008), where we stated:

> A specific loss requires more than just limitations upon an injured worker's occupational activities; a loss of use for all practical intents and purposes requires a more crippling injury than one that results in a

14

loss of use for occupational purposes. However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes. Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ. Whether the loss is for all practical intents and purposes is a question of law.

Id. (internal citations omitted).

If a claimant suffers multiple work-related injuries, the Act allows for a claimant to receive compensation for a disability that is separate and distinct from the injury that resolved into a specific loss of a body part. Community Service Group v. Workers' Compensation Appeal Board (Peiffer), 976 A.2d 594, 596 (Pa. Cmwlth. 2009). We have held that a claimant does not suffer a separate and distinct injury when a claimant suffers from multiple injuries that were the result of surgical procedures to treat the primary injury. See id. at 596-97 (holding that claimant's injury to her neck is not a separate injury to her cervical injury because her neck injury was the direct result of a cervical surgery). However, we have also held that a painful neuroma, such as the one exhibited by Claimant here, may, when the evidence supports such a conclusion, be separate and distinct from the permanent injury for which a claimant receives specific loss benefits. See Truck Lubricating & Washing Company v. Workmen's Compensation Appeal Board (Durr), 421 A.2d 1251, 1254 (Pa. Cmwlth. 1980) (holding that because medical testimony showed that the claimant's neuroma does not normally follow the claimant's specific injury, the claimant is entitled to disability benefits notwithstanding the compensability of the specific loss to the claimant's hand). Our cases establish that the key issue a party seeking recognition for a separate and distinct disability must establish is that such injury does not normally flow from

15

the specific loss injury.  School District of Philadelphia v. Workmen's Compensation Appeal Board (Pittman), 603 A.2d 266, 271 (Pa. Cmwlth. 1992).

Here, the WCJ expanded the description of Claimant's November 7, 1991 injury to include "avascular necrosis and chronic regional pain syndrome of the left foot."  (FOF ¶ 16.)  The WCJ found that the added injuries to her left foot were not separate and distinct from her injury to her left big toe, and that all her injuries resolved into a specific loss of her left foot.  (FOF ¶ 14.)  This finding is supported by the following exchange that occurred between Dr. Boc and Claimant's counsel:

> Q: . . . [T]he conditions that you have diagnosed that are part of her injury complex relating to November 7, 1991, Doctor, are any of the conditions that you are treating her for currently and have diagnosed considered in your opinion permanent?
> A: Yes.
> Q: What conditions would you consider permanent?
> A: The permanency is related to the loss of function of the great toe, the amputation of the toe, the multiple fusion sites and loss of arch, and locomotion to her foot, i.e. the gait abnormalities that she experiences, the chronic pain syndrome, and the nerve pathology that she experiences.
> Q: Are there any conditions that you have been treating her for that you discussed today that are not related to the work injury of November 7, 1991?
> A: No.
> Q: Have all the opinions you offered today been within a reasonable degree of medical and or podiatric certainty.
> A: Yes.  All the opinions I have rendered have been within a reasonable degree of podiatric certainty.

(Boc's Dep. at 45-46.) The above testimony represents substantial evidence in support of the WCJ's finding.[7] Accordingly, the WCJ did not err by determining that Claimant suffered a specific loss of her entire left foot and that her injuries to her foot are not separate and apart from her injuries to her left big toe.

## C. Credit for Past Compensation

Claimant next contends that, even if the WCJ was correct that Claimant's injuries have resolved into a specific loss of her entire left foot, the WCJ erred by granting Employer credit for the specific loss of her left foot from the date of the left big toe injury instead of from the date the WCJ found that Claimant lost the use of her left foot.

Section 306(c) of the Act provides for the exclusive means of compensation for the specific loss of a particular body part. 77 P.S. § 513 (setting forth the schedule of compensation for all disability resulting from a specific loss). It is well settled that an employee who sustains a specific loss is "not entitled to additional compensation beyond that provided by Section 306(c)" of the Act. Allegheny Ludlum Steel Corporation v. Workers' Compensation Appeal Board (Malobicky), 753 A.2d 330, 335 (Pa. Cmwlth. 2000). Past disability payments related to the specific loss of the body part are credited to the employer's obligations under Section 306(c). Id.

---

[7] "Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion." Pocono Mountain School District v. Workers' Compensation Appeal Board (Easterling), 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (internal quotations omitted). It is irrelevant whether the evidence in the record could support contrary findings than those made by the WCJ if there is evidence to support the findings that were actually made. Id.

17

Section 306(c)(4) provides compensation for a specific loss of a foot at a rate of "sixty-six and two-thirds per centum of wages" for 250 weeks. 77 P.S. § 513(4). Section 306(c)(25) provides claimants suffering a specific loss of a foot with an additional 25 weeks of compensation for a healing period. 77 P.S. § 513(25). Here, the WCJ awarded Claimant 275 weeks of disability benefits – 250 weeks pursuant to Section 306(c)(4), plus 25 weeks pursuant to Section 306(c)(25). Because Claimant received benefits from November 8, 1991 through October 21, 2013, no additional compensation was due under the Act and we see no error in the WCJ's award in this regard.

## D. Penalty Petition

Claimant next argues that the WCJ erred by denying the portion of her Penalty Petition alleging that Employer violated the Act by unilaterally reducing her compensation rate. According to Claimant, Employer's violations of the Act have a long history. After Employer filed its Amended NCP, it began paying her $3.10 less per week than what was due. According to Claimant, an initial round of litigation in 1995-96 led to Employer and Claimant reaching an agreement addressing past arrearages and the compensation rate was corrected moving forward.[8] However, after a second round of litigation in 2001-2003, which led to Claimant's benefits being terminated by a WCJ and subsequently reinstated by this Court, Employer reduced the benefits once again to the level in the Amended NCP instead of the original NCP. Claimant asserts that Employer has been in violation

---

[8] The alleged agreement does not appear in the certified record.

18

of the Act since 2003 and that the WCJ erred by not ordering Employer to reinstate her correct compensation rate.

Upon review of the evidence presented, however, the WCJ found that there was no violation of the Act because, although Employer unilaterally reduced the amount of benefits in 2003, "the 'reduced' indemnity amount is consistent with the [A]mended NCP issued on February 5, 1993." (FOF ¶ 17.) Based on the evidence before it, the WCJ believed that the Amended NCP was correct and that Employer "may have overpaid the Claimant indemnity benefits based upon the original 1992 NCP until 2003, when it modified benefits to the amended rate." (FOF ¶ 17.) The WCJ specifically found that "Claimant failed to demonstrate that the weekly compensation rate stated on the [A]mended NCP is materially incorrect" and that Claimant did not "file a petition seeking to review her wages." (FOF ¶ 17.) Employer argues that the WCJ correctly found that Claimant did not meet her burden of showing that the Amended NCP is incorrect.

We agree with the WCJ that Claimant has not demonstrated that the compensation rate on the Amended NCP is materially incorrect. While Claimant has produced pay stubs which show that there was a reduction in the amount of indemnity benefits she received, the amount paid is not inconsistent with the Amended NCP. Although Claimant argues that the Amended NCP, issued in 1993, is incorrect, there is no evidence to support that argument. We note that Claimant had previously presented the same payroll records in Sims as she does here, which listed her pay period ending July 1, 2001 and her gross compensation as $296.80, and a second pay record covering the pay period ending August 5,

19

2005, listing her gross compensation as $290.64. <u>Sims</u>, 928 A.2d at 365. At that time, she argued that Employer was paying her $6.16 less than what she was entitled. <u>Id.</u> Unlike in that case, Claimant did testify here and clarified some of the ambiguity that had apparently plagued the earlier determination. Nonetheless, the WCJ in that case, as did the WCJ here, found that Claimant provided insufficient evidence to meet her burden of proving why the amount she was being paid was incorrect. <u>Id.</u> at 365-66.

While penalties may be imposed pursuant to Section 413(b) of the Act,[9] "[w]here a claimant files a petition seeking an award of penalties, the claimant bears the burden of proving a violation of the Act occurred." <u>Schenck v. Workers' Compensation Appeal Board (Ford Electronics)</u>, 937 A.2d 1156, 1160 (Pa. Cmwlth. 2007). If a claimant sustains his or her burden, it is then "within the discretion of the WCJ to impose penalties." <u>Jordan v. Workers' Compensation</u>

---

[9] Added by Section 3 of the Act of February 8, 1972, P.L. 25, <u>as amended</u>, 77 P.S. § 774.1. Section 774.1 provides:

> Any insurer who suspends, terminates or decreases payments of compensation without submitting an agreement or supplemental agreement therefor as provided in section 408, or a final receipt as provided in section 434, or without filing a petition and either alleging that the employe has returned to work at his prior or increased earnings or where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect which is based upon an examination made within twenty-one days of the filing of the petition or having requested and been granted a supersedeas as provided in this section, shall be subject to penalty as provided in section 435.

<u>Id.</u>

Appeal Board (Philadelphia Newspapers, Inc.), 921 A.2d 27, 41 (Pa. Cmwlth. 2007).

Upon review, we conclude that the Board and WCJ did not err in finding that Claimant did not sustain her burden of showing that Employer violated the Act. Although it appears that there was a "reduction" in the amount of indemnity benefits, the WCJ found that the amount being paid by Employer was consistent with the Amended NCP. Claimant did not meet her burden of showing that the Amended NCP was incorrect, or that Claimant was entitled to an amount greater than the Amended NCP. Further, even if the reduction was a technical violation of the Act, the WCJ here made a determination as to why no penalty was warranted and this was not an abuse of discretion under these circumstances. See Best v. Workmen's Compensation Appeal Board (Nursefinders of Allentown), 668 A.2d 279, 282 (Pa. Cmwlth. 1995) (stating that "when the record indicates that an employer has violated the Act by unilaterally reducing benefits, the imposition of a penalty is left to the discretion of the WCJ").

### E. Unreasonable Contest

As a final matter, Claimant argues that the Board erred in holding that Employer's contest to Claimant's Penalty Petition was reasonable and that Claimant is entitled to unreasonable contest fees. Under Section 440(a) of the Act,[10] claimants who successfully litigate a contested case are entitled to an award

---

[10] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 996(a). Section 440(a) provides:

*(Continued…)*

21

of reasonable attorney's fees unless an employer can establish a reasonable basis for the contest. The employer "has the burden of presenting sufficient evidence to establish a reasonable basis for the contest." Varkey v. Workers' Compensation Appeal Board (Cardone Industries & Fireman Fund), 827 A.2d 1267, 1275 (Pa. Cmwlth. 2003). Whether an employer's contest is reasonable is a question of law subject to our plenary review. Id.

Because we conclude above that Claimant has not sustained her burden of showing that Employer has violated the Act, we also affirm the Board's determination that Employer presented a reasonable contest to Claimant's Penalty Petition.

## IV. Conclusion

Accordingly, for the foregoing reasons, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

---

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fees, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

Id.

22

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Donna Marie Price,       :
      :
      Petitioner       :
      :
      v.       :    No. 374 C.D. 2015
      :
Workers' Compensation Appeal Board   :
(School District of Philadelphia),       :
      :
      Respondent       :

## **O R D E R**

**NOW**, January 8, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**